# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **VIOLET JANE FLATT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:19-cv-00089** |
| | ) | **Judge Campbell / Frensley** |
| **ANDREW SAUL, COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Plaintiff has filed an accompanying Memorandum. Docket No. 14-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on April 19, 2016,[1] alleging that she had been disabled since January 1, 2016 due to "trigeminal neuralgia;" "biPolar;"

---

[1]In their briefs, the Parties specify April 18, 2016, possibly because that is the date on the unsigned application (Docket Nos. 14-1, p.1, 17, p.1, TR 192). However, this discrepancy had no effect on the ALJ's decision or the Court's analysis.

"menopause;" "severe anxiety;" "severe panic attacks;" and "3 nervous breakdowns." Docket No.

10, Attachment ("TR"), TR 195, 213. Plaintiff's application was denied both initially (TR 81) and

upon reconsideration (TR 99). Plaintiff subsequently requested (TR 112) and received (TR 38) a

hearing. Plaintiff's hearing was conducted on April 10, 2018, by Administrative Law Judge

("ALJ") John R. Daughtry. TR 38. Plaintiff and Vocational Expert ("VE"), Charles Wheeler,

appeared and testified. TR 38.

On September 7, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 16.

Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since January 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe combination of impairments: trigeminal neuralgia, chronic obstructive pulmonary disease with episodic bronchitis, major depressive disorder, post-traumatic stress disorder, social anxiety disorder, and panic disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that is limited to: lifting and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently; standing and/or walking up to or about 6 hours and sitting up to or about 6 hours in 8-hour workdays with normal breaks; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional exposure to pulmonary irritants (dusts, fumes, odors, gases or poor ventilation). The claimant can u [*sic*] understand, remember, or apply 1-2 step directions; can maintain concentration, persistence, and pace for 1-2 step tasks; can have occasional contact with the public, supervisors, and coworkers, but would work better with things rather than people; and can

2

adapt to infrequent workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 21, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of this decision (20 CFR 404.1520(g)).

TR 21-32.

On September 1, 2018, Plaintiff timely filed a request for review of the hearing decision. TR 168. On September 16, 2019, the Appeals Council issued a letter declining to review the case (TR 5-10), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id*.

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs*., 945 F. 2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs*., 803 F. 2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec*., 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec*., 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B*., 305 U.S. 197, 229 (1938). The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs*., 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F. 2d 139, 145 (6th Cir. 1980). In reviewing

4

the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

### B.    Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(l)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

5

light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(l), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and non-exertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff contends that the ALJ failed to properly evaluate: (1) whether Plaintiff's claim met a listing under 12.04 or 12.06; (2) Plaintiff's credibility; (3) the medical opinion evidence presented, including failing to provide sufficient justification for discounting the opinion of Plaintiff's treating physician, Dr. Melvin Butler; and (4) Plaintiff's RFC. Docket No. 14-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

### 1. Meeting a Listing

Plaintiff contends that the ALJ's finding that Plaintiff did not meet the listing requirements of 12.04 and 12.06 was incorrect. Docket No. 14-1, p. 27. Plaintiff essentially argues that she meets the requirements for both listings by quoting the criteria of both listings alongside citations to

7

pages in the record, apparently indicating that those pages demonstrate how Plaintiff meets each of the criteria. *See id.* at 27-30.

Defendant responds that the ALJ's finding that Plaintiff failed to satisfy listings 12.04 and 12.06 was correct because the ALJ's decision is supported by consideration of the entire record. Docket No. 17, pp. 3-4. Defendant argues that the ALJ specifically considered the exhibits noted by Plaintiff in his determination that Plaintiff had only moderate limitations in the broad areas of functioning listed in paragraph B and that Plaintiff's mental disorder did not meet the "serious and persistent" criteria of paragraph C. *Id.* at 5.

The Code of Federal Regulations states that to meet the listing requirements of listings 12.04 or 12.06, "your mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." 20 CFR § 404, Subpt. P, App. 1.

With regard to Listing 12.04, "depressive, bipolar and related disorders," the Code of Federal Regulations states the criteria as follows:

A.  Medical documentation of the requirements of paragraph 1 or 2:

    1.  Depressive disorder, characterized by five or more of the following:

        a.  Depressed mood;
        b.  Diminished interest in almost all activities;
        c.  Appetite disturbance with change in weight;
        d.  Sleep disturbance;
        e.  Observable psychomotor agitation or retardation;
        f.  Decreased energy;
        g.  Feelings of guilt or worthlessness;
        h.  Difficulty concentrating or thinking; or
        i.  Thoughts of death or suicide.

    2.  Bipolar disorder, characterized by three or more of the following:

        a.  Pressured speech;
        b.  Flight of ideas;
        c.  Inflated self-esteem;
        d.  Decreased need for sleep;

<div style="margin-left: 2em;">

e.     Distractibility;

f.     Involvement in activities that have a high probability of painful consequences that are not recognized; or

g.     Increase in goal-directed activity or psychomotor agitation.

</div>

<div style="text-align: center;">AND</div>

B.     Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

<div style="margin-left: 2em;">

1.     Understand, remember, or apply information (see 12.00E1).

2.     Interact with others (see 12.00E2).

3.     Concentrate, persist, or maintain pace (see 12.00E3).

4.     Adapt or manage oneself (see 12.00E4).

</div>

<div style="text-align: center;">OR</div>

C.     Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

<div style="margin-left: 2em;">

1.     Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2.     Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

</div>

20 CFR § 404, Subpt. P, App. 1, Listing 12.04.

     With regard to Listing 12.06, "anxiety and obsessive-compulsive disorders," the Code of Federal Regulations states the criteria as follows:

A.     Medical documentation of the requirements of paragraph 1, 2, or 3:

<div style="margin-left: 2em;">

1.     Anxiety disorder, characterized by three or more of the following:

<div style="margin-left: 2em;">

a.     Restlessness;

b.     Easily fatigued;

c.     Difficulty concentrating;

d.     Irritability;

e.     Muscle tension; or

</div>

</div>

<div style="text-align: center;">9</div>

f.      Sleep disturbance.

2.      Panic disorder or agoraphobia, characterized by one or both:

     a.      Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or

     b.      Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

3.      Obsessive-compulsive disorder, characterized by one or both:

     a.      Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
     b.      Repetitive behaviors aimed at reducing anxiety.

<div align="center">AND</div>

B.      Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1.      Understand, remember, or apply information (see 12.00E1).

2.      Interact with others (see 12.00E2).

3.      Concentrate, persist, or maintain pace (see 12.00E3).

4.      Adapt or manage oneself (see 12.00E4).

<div align="center">OR</div>

C.      Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1.      Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2.      Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 CFR § 404, Subpt. P, App. 1, Listing 12.06.

Considering the severity of Plaintiff's limitations in paragraph B, the ALJ opined:

In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant reportedly needs reminders to take medication and go to places, [*sic*] but does not need reminders to attend to personal care (Exhibit 19E pg. 3). The claimant can operate a television (*Id.* at 5). The claimant cannot pay bills, handle a savings/checking account, and use a checkbook/money orders; however, she can count change (*Id.* at 4). The claimant has average intelligence, average fund of knowledge, and average vocabulary (Exhibit 10F pg. 8; 13F pg. 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant had intact recent and remote memory (Exhibit 13F pg. 11, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). There is no indication from the record that the claimant is unable to understand her treatment or medication usage. At the hearing, the claimant was able to remember her personal history of symptoms, treatment, and work history over a period of years (Hearing Testimony).

In interacting with others, the claimant has a moderate limitation. The claimant reportedly lives with friends (Exhibit 19E pg. 1). The claimant reported that she has a hard time being around other people and authority figures; however, she has never been fired or laid off from a job due to problems getting along with other people (*Id.* at 6-7). The claimant is able to socialize sufficiently to shop for groceries by telephone (*Id.* at 4). The claimant is usually described as pleasant and cooperative, having normal speech, making appropriate eye contact, fairly well groomed, and in no acute distress (Exhibit 3F pg. 1; 4F pg. 1, 3; 5F pg. 3; 6F pg. 25; 9F pg. 18; 10F pg. 8; 13F pg. 11, 36, 52, 54, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant denied homicidal ideation (Exhibit 3F pg. 1; 10F pg. 8; 13F pg. 11, 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). At the hearing, the claimant was cooperative and responded to questions posed to her by her representative and the undersigned (Hearing Testimony).

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant reported having a hard time following instructions (Exhibit 19E pg. 6). The claimant is reportedly able to concentrate sufficiently to watch television, talk on the phone, count change, make meals, and perform household chores (*Id.* at 3-5). The claimant had intact concentration and associations (Exhibit 13F pg. 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant has normal thought process and thought content (Exhibit 9F pg. 18; 10F pg. 8; 13F pg. 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant was not prescribed or taking attention deficit related medication (Exhibit 18E). The claimant was able to participate during the length of the hearing, which lasted for approximately 40 minutes (Hearing Testimony).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reported little difficulty with her ability to dress, bathe,

care for her hair, shave, feed herself, use the toilet, make meals, and perform household chores (Exhibit 19E pg. 2-3). The claimant reported that she needs accompaniment to leave her home (*Id.* at 5). The claimant reported that she has a hard time dealing with stress and changes in routine (*Id.* at 7). However, the claimant is usually described as alert and oriented, fairly well groomed, well developed, having normal mood and affect, and having fair judgment (Exhibit 3F pg. 1; 4F pg. 1, 3; 5F pg. 3; 6F pg. 25; 9F pg. 18; 10F pg. 8; 13F pg. 11, 36, 52, 54, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). Although there is some reported suicidal ideation in the record, the claimant mostly denied suicidal ideation, intent, planning or attempts (Exhibits 3F pg. 1; 9F pg. 11; 10F pg. 8; 13F pg. 11, 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). There are no periods of psychiatric holds in the record during the relevant period.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

TR 22-23.

Considering whether the Plaintiff's condition satisfied the criteria of paragraph C, the ALJ stated:

The record indicates that the claimant has received ongoing counseling and medication for her mental impairments (Exhibit 3F pg. 1; 4F pg. 1, 3; 5F pg. 3; 6F pg. 25; 9F pg. 18; 10F pg. 8; 13F pg. 11, 36, 52, 54, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). However, no medical professional has offered any statement that returning to work would disrupt any routine established by the claimant. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Further, the record indicates that no consultant designated by the Commissioner to establish equivalency with the listings found as such.

TR 23.

As the above discussion shows, the ALJ appropriately considered the medical evidence regarding Listings 12.04 and 12.06 in determining that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. TR 22-23. The ALJ cites numerous pages in the record to support his decision, including notes by nurse practitioners, social workers, and psychiatrists, as well as Plaintiff's own function report. *Id.* Plaintiff's argument that the ALJ failed to consider the record as a whole when determining that Plaintiff's impairments neither met nor medically equaled a listing is thus unavailing.

Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal a listing, the ALJ's decision must stand.

## 2.     Credibility and Subjective Complaints

Plaintiff contends that the ALJ's decision regarding the credibility of Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms is not supported by the case record and is not sufficiently specific to make clear the weight the ALJ gave to Plaintiff's statements and the reason for the weight. Docket No. 14-1, p. 26. Specifically, Plaintiff alleges that the medical evidence and record demonstrate the credibility of her complaints. *Id*. Further, Plaintiff argues that because the ALJ failed to cite specific reasons for the finding on Plaintiff's credibility, the ALJ's determination is conclusory and must be reversed. *Id.*

Defendant responds that the ALJ considered the entire record and adequately discussed his reasons for finding that Plaintiff's symptoms were not entirely consistent with the record, so the ALJ's decision should be upheld. Docket No. 17, p. 12. Specifically, Defendant argues that the ALJ gave multiple reasons for discounting Plaintiff's disabling complaints, and "the balance of his analysis is closely and affirmatively linked to substantial evidence in the record." *Id.* at 14.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986), *quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("statements about your pain

13

or other symptoms will not alone establish that you are disabled . . . ."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("though Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").  Moreover, "allegations of pain . . . do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity."  *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), *construing* 20 C.F.R. §404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ discussed Plaintiff's subjective complaints as follows:

The claimant alleged that she is unable to work due to her impairments (Exhibit 2E pg. 2). The claimant alleges difficulty with her ability to bend, stand, walk, talk, hear, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others (Exhibit 19E pg. 6). The claimant alleges she is unable to stand for longer than 15-20 minutes (*Id.*) She alleges her breathing issues make it difficult for her to walk; she alleges she can walk 200 feet before needing to rest for 5-10 minutes (*Id.*) The claimant has a hard time completing activities of daily living due to her impairments (*Id.* at 2-5). The

14

claimant takes Zoloft, Xanax, Albuterol, Ventolin, Tylenol, and Ranitidine for her impairments (Exhibit 18E).

TR 24-25.

While the ALJ ultimately found that Plaintiff's impairments could reasonably be expected to cause some symptoms, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the evidence in the record. Specifically, the ALJ stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the record indicates she could perform light exertional work. There is **no testing in the record indicative of trigeminal neuralgia or other pain related disorders.** The claimant also reports feeling tired; however, the claimant denied experiencing fatigue, is rarely described as being fatigued by treating providers, and there are no reports of the claimant falling asleep at appropriate [*sic*] times or having sleep related hallucinations (Exhibit 4F pg. 1, 3; 5F pg. 2; 6F pg. 2). Despite the claimant's reported constant pain, she is rarely described by her treating providers as being more than mildly distressed, which is generally not expected of someone as significantly limited due to pain as the claimant alleged (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 25).
>
> The record also indicates that the claimant has ongoing issues with chronic obstructive pulmonary disease (Exhibit 4F pg. 1; 7F; pg. 6; 14F pg. 2). There is no imaging of the claimant's lungs suggestive of substantial impairment. **Physical examination routinely shows clear breath sounds, no crackles, no wheezes, and clear to auscultation, which is not indicative of substantial respiratory abnormalities**.

TR 25 (emphasis added).

As for Plaintiff's claim of mental impairments, the ALJ noted that mental status examinations in June, August, September, November, and December of 2016 all found Plaintiff "alert and oriented" with "normal speech," "organized and logical thought process," and recent and remote memory "intact." TR 25-26. The ALJ also notes that Plaintiff was described in these examinations as "cooperative" and having "appropriate behavior." TR 25.

As can be seen, the ALJ's decision specifically addresses not only the medical evidence,

15

but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 24-25. The ALJ's articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g.*, *Walters*, 127 F.3d at 531; *Kirk*, 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters*, 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley*, 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. *See King*, 742 F.2d at 975.

As discussed above, after assessing the medical and testimonial evidence, the ALJ ultimately determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. TR 25. In making this determination, the ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision. The ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was

16

proper. Therefore, this claim fails.

### 3. Weight Accorded to Medical Opinion Evidence

Plaintiff contends that the ALJ's decision must be reversed because the ALJ failed to properly evaluate medical evidence and thus his finding was not supported by substantial evidence or made pursuant to proper legal standards. Docket No. 14-1, p. 16. Specifically, Plaintiff argues that the ALJ should have given greater, if not controlling, weight to the opinion of Plaintiff's treating physician, Dr. Butler, because: (1) Dr. Butler's opinion was well supported, not inconsistent with other substantial evidence in the record, and not disputed by another medical expert in the record; and (2) Dr. Butler had examined Plaintiff three times. *Id.* at 11, 13. Plaintiff also argues that the ALJ did not provide sufficient justification for the weight accorded Dr. Butler's opinion. *Id.* at 14. Finally, Plaintiff contends that the ALJ erred by relying on the opinions of state agency physicians who never examined Plaintiff and did not have the opportunity to review the full record. *Id.* at 12.

Defendant responds that Plaintiff has established no error in the ALJ's consideration of the medical opinion evidence that warrants further consideration. Docket No. 17, p. 12. Specifically, Defendant argues that Dr. Butler's opinion should not have been given greater or controlling weight because (1) the ALJ showed Dr. Butler's opined limitations on Plaintiff's abilities were inconsistent with evidence in the record; (2) the ALJ properly evaluated relevant factors in assigning weight, including the fact that Dr. Butler had only a limited history with Plaintiff and did not treat Plaintiff's mental impairments; (3) it is immaterial whether another medical expert disputed Dr. Butler's opinion because only the ALJ is charged with weighing opinion evidence. *Id.* at 7-9. Defendant avers that the ALJ provided sufficient justification for the weight accorded Dr. Butler's opinion. *Id.* at 8. Finally, Defendant responds that the ALJ did not err by relying on

the opinions of state agency physicians who never treated Plaintiff and did not review the complete record because, in appropriate circumstances, a non-examining opinion can receive greater weight than even a treating opinion, even where the non-examining doctor does not have access to the complete record. *Id.* at 10.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017 and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed her application prior to March 27, 2017. TR 192. As such, Plaintiff's case is governed by the rules that were in effect at the time of the ALJ's decision. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The regulations that were in effect at that time stated as follows:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the

nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

Under these former regulations, the ALJ was required to articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.*, 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

In accordance with the regulations as they read at the time, the Sixth Circuit has held that,

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

19

"[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Under this framework, if the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the opinion evidence as follows:

> As for the opinion evidence, the undersigned considered the opinion of Ok Yung Chung, M.D., and Kimberlee Terry, M.D., and gave them little weight, and only insofar as they suggest that the claimant is not disabled and could perform, at least, the limited range of light work described in Finding 5. Dr. Chung and Dr. Terry both opined that the claimant did not have severe physical impairments, which is not consistent with the evidence discussed herein (Exhibit 1A pg. 5-6; 4A pg. 6-7). It is notable that physical examinations during the relevant period generally showed that the claimant had a normal gait, normal motor function, and normal sensation, which tends to suggest that she could perform, at least, a limited range of light exertional work (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 3). The claimant also reported feeling tired at times; however, the claimant denied experiencing fatigue, is rarely described as fatigued by treating providers, and there are no reports of the claimant falling asleep at inappropriate times. (Exhibit 4F pg. 1, 3; 5F pg. 2; 6F pg. 2). Despite the claimant's reported constant pain, she is rarely described by her treating providers as being more than mildly distressed, which is not generally expected of someone as significantly limited due to pain as the claimant alleged (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 25). There is no imaging of the claimant's lungs suggestive of a substantial impairment. Physical examination routinely showed clear breath sounds, no crackles, no wheezes, and clear to auscultation, which is not indicative of significant respiratory abnormalities (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 25). The claimant reported she is able to watch television, make meals, and perform household chores, which supports finding that she could perform the requirements of the light exertional range work described in Finding 5 (Exhibit 19E pg. 3-5).

The undersigned considered the opinion of Melvin Butler, M.D., and gave it some weight, but it is not entirely consistent with the claimant's treatment record and the other evidence of record considered in its entirety, as discussed herein. Dr. Butler reportedly only briefly saw the patient three times at the local Health Department. With a limited history involving the claimant, Dr. Butler opined that she could occasionally lift up to 20 pounds and carry 10 pounds; can sit for 6 hours, stand for 30 minutes, and walk for 15 minutes at a time; the claimant could sit and stand for 2 hours and walk for 3 hours in an 8-hour workday; she can frequently finger and occasionally reach, handle, and push/pull bilaterally; she can frequently operate foot controls bilaterally; she can frequently balance and occasionally stoop, kneel, and climb stairs and ramps; she can never crouch, crawl, or climb ladders or scaffolds; she can frequently have exposure to loud noise, moving mechanical parts, humidity/wetness, extreme heat, and vibrations and occasional exposure to operating a motor vehicle, pulmonary irritants, and extreme cold; she can never have exposure to unprotected heights (Exhibit 15F pg. 1-5). Dr. Butler's opinion regarding lifting, carrying and the occasional postural limitations noted above, [*sic*] appear [*sic*] to be consistent with the evidence; however, the physical examinations of the claimant consistently show that she has had a normal gait, normal motor function, and normal sensation, which tends to suggest that the claimant could certainly sit, stand and walk up to 6 hours each during the course of 8 hour workdays with normal breaks and could perform a limited range of light exertional work (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 3). The claimant also reported feeling tired at times; however, the claimant denied experiencing ongoing fatigue, is rarely described as fatigued by treating providers, and there are no reports of the claimant falling asleep at inappropriate [times] (Exhibit 4F pg. 1, 3; 5F pg. 2; 6F pg. 2). Despite the claimant's reported constant pain, she is rarely described by her treating providers as being more than mildly distressed, which would generally not be expected of someone with the extreme sitting, standing and walking limitations suggested by Dr. Butler (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 25). There is no imaging of the claimant's lungs suggestive of substantial impairment. Physical examination routinely shows clear breath sounds, no crackles, no wheezes, and clear to auscultation, which is not indicative of significant respiratory abnormalities (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 25).

As for the opinions regarding the claimant's mental impairments, the undersigned assigns significant weight to the opinion of Lisa Renner, M.D., a State agency psychiatric consultant, insofar as it supports and aligns with the claimant's determined residual functional capacity. Dr. Renner viewed the medical evidence and opined that the claimant has moderate impairment in her ability to interact with the general public, in accepting instructions and criticism from supervisors, in adapting to changes in work settings, in working with others (close proximity), in carrying out detailed instructions (but no limitation carrying out simple instructions), and in maintaining concentration or persistence for extended periods.

Dr. Renner's opined limitations support, at least, the limitations included in the claimant's determined residual functional capacity. (Exhibit 1A, pg. 9-11). Dr.

Renner opined that the claimant is able to persist at tasks that can be learned in 1 to 3 months on the job with reduced public contact within physical limitations (Exhibit 4A pg. 9-11). The claimant lives with friends (Exhibit 19E pg. 1). The claimant is usually described as pleasant and cooperative, having normal speech, making appropriate eye contact, fairly well groomed, and in no acute distress, indicating she could occasionally interact with others in the workplace (Exhibit 3F pg. 1; 4F pg. 1, 3; 5F pg. 3; 6F pg. 25; 9F pg. 18; 10F pg. 8; 13F pg. 11, 36, 52, 54, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant can operate a television (*Id.* at 5). The claimant has average intelligence, average fund of knowledge, and average vocabulary (Exhibit 10F pg. 8; 13F pg. 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant had intact recent and remote memory (Exhibit 13F pg. 11, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant is able to understand and concentrate sufficiently to watch television, talk on the phone, count change, make meals, and perform household chores, indicating she could perform simple tasks (Exhibit 19E pg. 3-5). The claimant had intact concentration and associations (13F pg. 11, 36, 52, 54, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant has normal thought processes and thought content (Exhibit 9F pg. 18; 10F pg. 8; 13F pg. 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant reported little mental difficulty with her ability to dress, bathe, care for her hair, shave, feed herself, use the toilet, make meals, and perform household chores (Exhibit 19E pg. 2-3).

The undersigned gives less weight to the opinion of M. Duncan Cherry, Ph.D., [*sic*] a State agency psychological consultant. Dr. Cherry [*sic*] opined that the claimant has moderate impairment in maintaining social functioning and maintaining concentration, persistence or pace. Dr. Cherry [*sic*] further opined that the claimant had moderate impairment in accepting instructions and criticism from supervisors, in adapting to changes in work settings, in working with others (close proximity), in carrying out detailed instructions (but no limitation carrying out simple instructions), and in maintaining concentration or persistence for extended periods. However, Dr. Cherry [*sic*] suggested that the claimant has marked impairment in her ability to work with the general public and that she could only have infrequent, superficial contact with coworkers and supervisors. (Exhibit 4A). Dr. Cherry's [*sic*] suggestions in this connection appears [*sic*] to be internally inconsistent with his general opinion of moderate impairment in maintaining social functioning and appears to be overly pessimistic in view of the record considered in its entirety, as discussed herein. Notably, the claimant's Centerstone records note essentially normal and intact clinical signs on many of the mental status examinations associated with treatment notes during the relevant period. As such, Dr. Cherry [*sic*] suggestions in the area of social functioning do not appear to be well supported.

Dr. Butler suggested that the claimant has marked limitations on her ability to understand, remember, and carry out simple instructions; and extreme limitations on her ability to make judgments on simple decisions, understand, remember, and carry out complex instructions, make judgments on complex instructions, interact with others, and respond appropriately to usual work situations and changes in a routine work setting (Exhibit 16F pg. 1-2). However, the Health Department

22

records in evidence, [*sic*] show little if any mention [of] mental health impairments. As such, the evidence suggests that Dr. Butler did not treatment [*sic*] the claimant's alleged mental health impairments. Accordingly, Dr. Butler's opinion regarding mental limitations is unsupported and is inconsistent with the evidence discussed herein, including the opinion of Dr. Renner, and is given little weight.

TR 27-29.

As the ALJ's discussion shows, the ALJ evaluated factors including treatment history, supportability, and consistency in determining the proper weight accorded the opinions of the treating physician and state agency medical consultants. TR 27-29. The ALJ further cites specific pages of medical examination evidence in the record to support his conclusions about the consistency of these doctors' opinions with substantial evidence in the record. *See id.* While Plaintiff is correct that the opinion of a treating physician such as Dr. Butler is typically accorded greater weight, the Regulations do not mandate such treatment if the opinion is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(c)(2). When opinion evidence is inconsistent, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

In the case at bar, the ALJ weighed the various medical opinions proffered according to treatment history, supportability, and consistency and ultimately determined certain opinions, including Dr. Renner's, to be more consistent with the record as a whole. TR 27-29. Such an evaluation is proper according to the Regulation. *See* 20 CFR § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Because the ALJ found the opinions of certain non-examining state medical consultants, including Dr. Renner, more consistent and supported than those of Dr. Butler, the ALJ did not err in according these opinions more weight. Accordingly, Plaintiff's argument fails.

4. **Residual Functional Capacity ("RFC")**

Plaintiff maintains that the ALJ failed to properly evaluate Plaintiff's RFC. Docket No. 14-1, p. 27. Plaintiff does not provide specific citations to support such this allegation, merely summarizing the findings of the ALJ and VE and citing pages in the record that she contends support a finding that Plaintiff meets the listing criteria discussed above. *See id.* at 27-30.

Defendant responds that the ALJ properly determined Plaintiff's RFC because the ALJ's restrictive RFC determination accounted for all of Plaintiff's physical and mental limitations that the ALJ found to be supported by the record. Docket No. 17, p. 14.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC to perform "light work as defined in 20 CFR 404.1567(b)." TR 24. The ALJ explained:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that is limited to: lifting and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently; standing and/or walking up to or about 6 hours and sitting up to or about 6 hours in 8-hour workdays with normal breaks; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional exposure to pulmonary irritants (dusts, fumes, odors, gases or poor ventilation). The claimant can u [*sic*] understand, remember, or apply 1-2 step

24

directions; can maintain concentration, persistence, and pace for 1-2 step tasks; can have occasional contact with the public, supervisors, and coworkers, but would work better with things rather than people; and can adapt to infrequent workplace changes.

*Id.*

In so finding, the ALJ considered Plaintiff's reported abilities as well as the objective evidence on record. TR 26-27. Specifically, the ALJ stated:

> Overall, the record indicates that the claimant could perform a range of light exertional work with the above stated limitations. Physical examinations of the claimant show that she has consistently had a normal gait, normal motor function, and normal sensation, which tends to suggest that she could perform light exertional work (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 3). The claimant also reported feeling tired; however, the claimant denied experiencing fatigue, is rarely described as being fatigued by treating providers, and there are no reports of the claimant falling asleep at inappropriate times (Exhibit 4F pg. 1, 3; 5F pg. 2; 6F pg. 2). Despite the claimant's reported constant pain, she is rarely described by her treating providers as being more than mildly distressed, which is not generally expected of someone as significantly limited due to pain as the claimant alleged (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 25). There is no imaging of the claimant's lungs suggestive of substantial impairment. Physical examination routinely shows clear breath sounds, no crackles, no wheezes, and clear to auscultation, which is not indicative of substantial respiratory abnormalities (Exhibit 4F pg. 1, 3; 5F pg. 3; 6F pg. 25). The claimant reported that she is able to watch television, make meals, and perform household chores, which supports that she could perform the requirements of light exertional work (Exhibit 19E pg. 3-5). As for the claimant's mental impairments, the claimant reportedly lives with friends (Exhibit 19E pg. 1). The claimant has a hard time being around other people and authority figures; however, she has never been fired or laid off from a job due to problems getting along with other people (*Id.* at 6-7.) [*sic*] The claimant is usually described as pleasant and cooperative, having normal speech, making appropriate eye contact, fairly well groomed, and in no acute distress, indicating she could occasionally interact with others in the workplace (Exhibit 3F pg. 1; 4F pg. 1, 3; 5F pg. 3; 6F pg. 25; 9F pg. 18; 10F pg. 8; 13F pg. 11, 36, 52, 54, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant can operate a television (*Id.* at 5). The claimant cannot pay bills, handle a savings/checking account, and use a checkbook/money orders; however, she can count change (*Id.* at 4). The claimant has average intelligence, average fund of knowledge, and average vocabulary (Exhibit 10F pg. 8; 13F pg. 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant had intact recent and remote memory (Exhibit 13F pg. 11, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant is able to understand and concentrate sufficiently to watch television, talk on the phone, count change, make meals, and perform household chores, indicating she could perform simple tasks (Exhibit 19E pg. 3-5). The claimant had intact concentration and associations

25

(Exhibit 13F pg. 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). The claimant has normal thought processes. The claimant reported little mental difficulty with her ability to dress, bathe, care for her hair, shave, feed herself, use the toilet, make meals, and perform household chores (Exhibit 19E pg. 2-3). The claimant reported she needs accompaniment to leave her home (*Id.* at 5). The claimant has a hard time dealing with stress and changes in routine (*Id.* at 7). However, the claimant is usually described as alert and oriented, fairly well groomed, well developed, having normal mood and affect, and having fair judgment (Exhibit 3F pg. 1; 4F pg. 1, 3; 5F pg. 3; 6F pg. 25; 9F pg. 18; 10F pg. 8; 13F pg. 11, 36, 52, 54, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). Although there is some suicidal ideation in the record, the claimant mostly denied suicidal ideation, intent, planning or attempts (Exhibit 3F pg. 1; 9F pg. 11; 10F pg. 8; 13F pg. 11, 36, 58, 64, 69, 71, 74, 77, 81-82, 90, 93). For these reasons, the claimant could perform the above stated residual capacity.

TR 26-27.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, providing numerous citations to evidence in the record to back up his determination. TR 24, 26-27. The ALJ properly evaluated the evidence in concluding that Plaintiff retained the RFC to perform light work with additional limitations, and the Regulations do not require more. Thus, Plaintiff's argument on this point fails.

## IV.    RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**